STATE *v.* HAMILTON COUNTY.

(*Knoxville*, September Term, 1940.)

Opinion filed November 23, 1940.

520

Roy H. Beeler, Attorney-General, and W. F. Barry and Harry Phillips, Assistant Attorneys-General, for complainant.

Thos. S. Myers, of Chattanooga, for defendant.

Mr. Justice McKinney delivered the opinion of the Court.

We quote the following from the brief filed on behalf of the State:

"This suit was filed by the State of Tennessee, acting through the Attorney-General with the approval of the Commissioner of Finance and Taxation, against Hamilton County to collect gasoline taxes in the sum of $28,-688.48 plus penalties and interest. The case was tried on bill, answer and stipulation.

"The two questions involved are as follows:

"1. When a county furnishes to its employees gasoline which is used in the employees' personally owned automobiles, and the county makes a profit of $.06024 upon each gallon so furnished, is the county liable for the State gasoline tax imposed upon the privilege of selling and distributing gasoline?

"2. When a county furnishes gasoline for use on WPA projects and credits itself for said gasoline as its stipulated share of the cost of the projects at $.15 per gallon while the gasoline was purchased by the county at $.0932 per gallon, is the county liable for the State gasoline tax upon such gasoline?

"The Chancellor decided both of these questions in the negative, held the County not liable for the tax and dismissed the bill. The complainant thereupon perfected its appeal to this Court."

With respect to the gasoline furnished the employees of the county, the stipulation provides as follows:

"Hamilton County purchases gasoline outside of Tennessee and brings same into the State and stores same in county maintained storage tanks.

"The greater part of the gasoline so purchased and stored by defendant is used in county owned motor vehicles. However, during the period from July 1, 1931, through July 1, 1937, there was delivered into personally owned automobiles of county employees a total of 173,065½ gallons of gasoline. No State gasoline tax has been paid upon any of said gasoline.

"In event the Court holds that Hamilton County is entitled to credit for that portion of said gasoline placed in personally owned automobiles of county employees which was used for county purposes, it is stipulated and agreed that a reference be had before the Master to determine what part of said 173,065½ gallons of gasoline was used for county purposes and what part for personal purposes.

"The gasoline purchased by defendant during said period was purchased at an average cost of $0.08976 per gallon, including transportation, delivered to defendant's filling station in Hamilton County. Said gasoline was furnished to said employees at $0.15 per gallon."

The gasoline tax statutes impose a privilege tax upon the privilege of selling or distributing gasoline in this State. Code, section 1126 *et seq.*; *Foster & Creighton Co.* v. *Graham*, 154 Tenn., 412, 285 S. W., 570, 47 A. L. R., 971; *Quick Service Tire Co.* v. *Smith*, 156 Tenn., 96, 299 S. W., 807.

These statutes do not provide that the counties of the State shall be subject to this tax, and, as a general rule, they are impliedly excluded from general tax laws. *State ex rel.* v. *City of Jackson*, 172 Tenn., 119, 124, 110 S. W. (2d), 323; *Henson* v. *Monday*, 143 Tenn., 418, 224 S. W., 1043; *Mayor & Aldermen of Morristown* v. *Hamblen County*, 136 Tenn., 242, 188 S. W., 796; *Smith* v. *Nashville*, 88 Tenn., 464, 12 S. W., 924, 7 L. R. A., 469;

*City of Nashville* v. *Smith,* 86 Tenn., 213, 6 S. W., 273, 274. In this last-named case the court, speaking through Justice CALDWELL, gave this sound reason for the rule exempting cities and counties from such taxes:

"But we think an express statutory exemption is not required to enable the city to avoid the payment of the tax in such a case as this.

"Some things are always presumptively exempted from the operation of general revenue laws, because it is reasonable to suppose that they were not within the intent of the legislature.

"It cannot be supposed that the legislature would ever lay the burden of taxation upon public property; therefore, however general may be the enumeration of property for taxation, the reasonable conclusion is that the property held by the state and its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact. Cooley, Tax'n, 172; 1 Desty, Tax'n, p. 48, section 16."

In the *Hamblen County Case* [136 Tenn., 242, 188 S. W., 797], the court, in the opinion prepared by Chief Justice NEIL, said: "As pointed out, the failure to make such public property liable for special assessments in an act devoted to that subject automatically operates as an exemption in favor of such public property in actual use for public purposes."

Article 2, Section 28, of the State Constitution provides that "all property, real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes," etc.

While, as heretofore stated, it will not be presumed that the Legislature intended that the property held by the State and its municipalities, for govern-

mental purposes, was intended to be taxed, we are of the opinion that the Legislature never intended that the counties of the State should depart from their lawful functions, engage in the illegal sale of gasoline, and, by underselling licensed dealers, deprive the State of a substantial part of its gasoline tax, which constitutes a large part of its revenue.

In view of what we have said, it follows that when a county departs from its governmental activities and engages in a business enterprise for gain, which would ordinarily be taxable and which the county is not authorized to engage in, that it then becomes liable for the tax. *Knoxville* v. *Park City,* 130 Tenn., 626, 172 S. W., 286, L. R. A., 1915D, 1103; *Smith* v. *Nashville, supra; City of Clarksville* v. *Montgomery County* (Tenn. Ch. App.), 62 S. W., 33; *Allen* v. *Regents of University System of Georgia,* 304 U. S., 439, 58 S. Ct., 980, 82 L. Ed., 1448; *United States* v. *California,* 297 U. S., 175, 56 S. Ct., 421, 80 L. Ed., 567; *State of Ohio* v. *Helvering,* 292 U. S., 360, 54 S. Ct., 725, 78 L. Ed., 1307; *South Carolina* v. *United States,* 199 U. S., 437, 26 S. Ct., 110, 50 L. Ed., 261, 4 Ann. Cas., 737; *Salt Lake City* v. *Hollister,* 118 U. S., 256, 6 S. Ct., 1055, 30 L. Ed., 176.

The fact that defendant's action in selling gasoline to its employees was *ultra vires* is no defense against liability for the tax. *Salt Lake City* v. *Hollister, supra; State* v. *Knoxville,* 115 Tenn., 175, 90 S. W., 289.

We hold, therefore, that the county is liable to the State for the profit it realized on the 173,065½ gallons of gasoline sold to its employees, to-wit, the sum of $10,-426.30 together with interest thereon from July 1, 1937, the date on which the last sale was made.

The stipulation contains no facts that would justify a reference. The amount of the recovery herein is

the same sum as that demanded of the county by the State in a statement furnished the county by the Commissioner of Finance and Taxation, which is presumed to be correct, and which presumption the defendant has not overcome by any evidence establishing the incorrectness of the statement. *McKinnon & Co.* v. *State,* 174 Tenn., 619, 130 S. W. (2d), 91.

With respect to the other branch of the cause, the stipulation is as follows:

"During said period defendant furnished 236,790 gallons of gasoline for use on projects conducted in Hamilton County by the Federal Works Project Administration, known as WPA projects, wherein Hamilton County was required to bear a stipulated part of the cost of the project. All of said gasoline so furnished by defendant on WPA projects was used for governmental purposes. In its reports to the Works Progress Administration defendant credited itself for said gasoline as its share of the cost of such projects at 15c per gallon of gasoline. The gasoline furnished on WPA projects was purchased by defendant at an average cost of $0.932 per gallon."

From this scant statement we are unable to say that the defendant is liable for the tax.

The gasoline was used solely for governmental purposes. If the county had constructed these projects, or had furnished the gasoline at cost, it would not have been liable for a tax. It may be that in estimating the cost of these projects, including therein gasoline at fifteen cents per gallon, the county obtained larger contributions from WPA than it would have done had it listed gasoline at cost, and to this extent it may have imposed on its benefactor. But we are unable to see that the State has suffered any loss by these transactions. WPA could have demanded that the county furnish the

gasoline at cost, but it did not do so. Perhaps it was purposely dealing liberally with the county. These contributions by WPA were in the nature of gifts; and if it, by crediting gasoline at fifteen cents, enlarged its donations and correspondingly reduced the sums the county was to pay, we see no basis for complaint by the State.

These were strictly governmental projects promoted by the county for the use of the public. As an inducement to the county to make these improvements the Federal Government agreed to pay a substantial part of their cost. In these circumstances the method by which the parties arrived at the proportionate cost each was to bear is a matter that does not concern the State.

The decree of the Chancellor will be modified in accordance with this opinion, and the costs will be divided.