AMERICAN CAN CO. *v.* MCCANLESS.

(*Nashville,* December Term, 1945.)

Opinion filed March 2, 1946.

CHARLES L. CORNELIUS, of Nashville, for complainant.

WILLIAM F. BARRY, Solicitor-General, and ALLISON B. HUMPHREYS, JR., Assistant Attorney-General, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The Can Company is a foreign manufacturing corporation which qualified in 1937 to do business in Tennessee. The Excise Tax Law, Chapters 99 and 176 of the Public Acts of 1937, Code, Section 1316, lays a tax of three and three-fourths percent on the net earnings of such corporations for "their next preceding fiscal or calendar year, from business done within the State"; and requires such corporations, to which class the Can Company belongs, to pay this tax annually "to the Commissioner of Finance & Taxation."

It appears that the Can Company reported for the years 1937 to 1942, inclusive, the amount of its sales to customers in Tennessee which originated in Tennessee only, and paid the tax thereon. Its attention having been called by an amendment to the form of report submitted by the commissioner, and otherwise, to the fact that the intention of the commissioner was to have reported and to tax accordingly all sales to customers within Tennessee "regardless of origin", it so reported and paid the tax computed thereon for that year.

The commissioner thereupon learning that the reports of the company for the years 1937 to 1942, inclusive, had not embraced its sales to all customers within Tennessee originating outside of Tennessee, and had not paid the tax on this basis for these years demanded of the company reports and payment for these years on this basis. The Can Company refused to comply with this demand, asserting it to be based on a misconstruction by the commissioner of the language of the statute, unauthorized and illegal, and thereupon brought this suit seeking a declaratory judgment construing the applicable statute, contending that it was not liable for this tax on its business originating outside of Tennessee.

The commissioner, representing the State, questioned by demurrer the right of the company to so proceed and by answer contended that the construction placed by the commissioner upon the statute was correct, was in accordance with rulings made by the attorney general in 1937, and then adopted by the commissioner, and with the holding of this Court in the case of *Memphis Natural Gas Company* v. *McCanless*, 180 Tenn. 695, 177 S. W. (2d) 843, adopting this construction.

The chancellor, overruling the demurrer, was of opinion that the contention of the Commissioner was supported by *Memphis Natural Gas Company* v. *McCanless, supra,* and so decreed. The company appealed.

While not intending to intimate disagreement with this holding of the learned chancellor on the merits, supported by the construction of this tax statute by this Court in the *Memphis Natural Gas Case,* we are not of opinion that this proceeding can be entertained since it is in in direct contravention of the express provisions of Code, Sections 1790, 1792, 1794 and 1795, which read as follows:

"1790 (1059). Taxpayer must pay his taxes, but may protest.—In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due the state, shall institute any proceedings, or take any steps for the collection of the sum alleged or claimed to be due, by said officer, from any citizen, the person against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute or clause of the constitution of the state, pay the sum under protest. (1873, ch. 44, sec. 1.)"

"1792 (1061). Such taxpayer may sue the collector.— The person paying said revenue may, at any time within thirty days after making said payment, and not longer

thereafter, sue the said officer having collected said sum, for the recovery thereof. (Ib.)''

"1794 (1063). No other remedy for taxpayer.—There shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally, or attempt to collect revenue in funds only receivable by said officer under the law, the same being other or different funds than such as the taxpayer may tender, or claim the right to pay, than that above provided. (Ib., sec. 2.)''

"1795 (1064). No injunction or other preventive writ allowed.—No writ for the prevention of the collection of any revenue claimed, or to hinder and delay the collection of the same, shall in any wise issue, either injunction, supersedeas, prohibition, or any other writ or process whatever; but in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and in no other manner. (Ib.)''

It appears by stipulation that in the instant case "an officer, charged by law with the collection of revenue due the state," here the Commissioner of Finance and Taxation, has taken "steps for the collection of the sum alleged or claimed to be due, by said officer, from" the American Can Company, and that this "person," the Can Company, "against whom the proceeding or step is [has been] taken . . . conceives the same to be unjust or illegal, or against any [a] statute . . . of the state." It, therefore, follows that if the Can Company desires to contest the same, it shall "pay the same under protest."

Having paid the tax demanded under protest, it is provided by Sections 1794 and 1795, supra, that the taxpayer may then, within thirty days, sue to recover the sum he

claims to have been unjustly or illegally exacted of him, and this is his sole and exclusive remedy.

The quoted code sections are codifications of Chapter 44, Acts of 1873. In his opinion in *Bank of Commerce & Trust Co.* v. *Senter*, 149 Tenn. 569, 260 S. W. 144, 151, where the complainant corporations, having paid excise taxes alleged to have been illegally collected from them, brought suit to recover, charging both that the act involved was unconstitutional and that, if constitutional, they had been wrongfully denied certain deductions and credits, Mr. Justice Cook, at page 595, thus clearly states the import of the Act of 1873 (Code Section 1790 et seq.) and distinguishes the procedural rights arising thereunder from those in cases of illegal assessments. We quote language directly applicable to the instant case: "Chapter 44, Acts of 1873, Shannon's Code, 1059 et seq., provides a remedy for the taxpayer confronted by an unjust or illegal claim for taxes. The state cannot be postponed in the collection of its revenue for the taxpayer must pay the tax under the conditions prescribed, as a condition precedent to contesting the liability for the tax or any part of it. The proceeding under the act of 1873 was not intended as the remedy for an erroneous or unjust assessment. Where the assessment of the *ad valorem* is challenged, the remedy of the taxpayer is as indicated in *Briscoe* v. *McMillan,* [117 Tenn. 115, 100 S. W. 111]; *Ward* v. *Alsup* [100 Tenn. 619, 745, 46 S. W. 573] and other cases cited. Where the state's fiscal agents make an erroneous or illegal charge and require the taxpayer to pay more than the law authorizes them to collect, chapter 44, Acts of 1873, Shannon's Code, 1059, supplies the remedy. *Phillips* v. *Lewis,* 3 Shannon Cas. 230; [*Atlas*] *Powder Co.* v. *Goodloe,* 131 Tenn. [490], 499, 175 S. W. 547; *Western Oil Refining Co.* v. *Dalton,*

131 Tenn. 329, 174 S. W. 1138. Where the levy is in part unauthorized by law, the taxpayer may pay the tax under protest and recover to the extent of the illegal exaction. *Bright* v. *Halloman,* 7 Lea 309 [75 Tenn. 309]; [*City of*] *Knoxville* v. *Harth,* 105 Tenn. 436, 58 S. W. 650, 80 Am. St. Rep. 901.''

Our later cases have approved and followed this holding. The complaint in the instant case is that excise taxes are being demanded by the Commissioner of Finance and Taxation, who has taken ''steps for the collection of the sum alleged or claimed to be due, by said officer,'' and who, by Code, Section 1316, which imposes the excise tax involved, is designated as the collecting officer for said tax.

There can be no escape from the conclusion that in this situation and upon these facts complainants are limited as to remedy and procedure by the Act of 1873, codified as above indicated. It results that not having paid the disputed tax the suit brought to test its validity cannot be maintained, and no right to a declaratory judgment arises, such as was recognized in *Bank of Commerce & Trust Co.* v. *Senter,* where the disputed tax had been paid.

This Court has repeatedly made use of the authorities conferred by the statutory provisions of the Act of 1923, Code Sections 8835, 8836, to declare rights, but recognition of such procedure could not be given in cases expressly covered by the terms of the Act of 1873, without a showing of compliance with the condition precedent therein stipulated. To do so would be to defeat and destroy the manifest primary intention of that Act, which was to prevent delay in the collection by the State of its essential revenues. As said in the *Bank of Commerce Case, supra,* decided after the enactment of the

declaratory judgment law and with that Act before the Court, "The state, cannot be postponed in the collection of its revenue."

We refer to two other of our cases in which the sovereign right of the State to payment of its taxes has been strongly stated. In *City of Nashville* v. *Smith,* 86 Tenn. 213, 6 S. W. 273, wherein the city brought suit to contest its liability for a privilege tax for the operation of its water works system. Although this Court held that the city was not liable for the tax, because the operation of a city water works system is a public purpose, the suit was dismissed insofar as the state tax, as distinguished from the county tax, was affected. The Court said (86 Tenn. at page 217, 6 S. W. at page 275): ". . . however unjust or illegal the demand against the city may have been, the only course left open to it was to pay the state's part of the same under protest, and then sue for the recovery thereof within 30 days thereafter. No writ of injunction, *supersedeas,* prohibition, or other process can lawfully issue for the prevention of the collection of revenue claimed to be due the state."

Also, in *East Tennessee Brewing Co.* v. *Currier,* 126 Tenn. 535, 150 S. W. 541, a case in which the Brewing Company was contesting the legality of a claim for the privilege tax upon liquor dealers, the Court said (126 Tenn. at page 547, 150 S. W. at page 544): ". . . As to the state tax, of course, it had this to pay. The state does not litigate as an individual, and does not allow its demands for taxes to be held up pending controversy with an individual. The state requires its dues paid, but offers to the individual full opportunity, by paying under protest, with the privilege of suit for their recovery, to have the merits of every claim for taxes fully heard and considered. This is as much as an individual can claim in

such a controversy with the state, and such proceedings are according to the law of the land.''

Other more recent cases holding that payment under protest of this class of taxes is a condition precedent to the right to contest such demands by the State are *Fort v. Dixie Oil Co.*, 170 Tenn. 183, 93 S. W. (2d) 1260, and *Lyons, etc.*, v. *Lay et al.*, 179 Tenn. 388, 166 S. W. (2d) 778, 779, in which Mr. Justice PREWITT, speaking for the Court, said: ''The payment under the protest statute is applicable in every case, even though in particular instances it may work a hardship.''

While in some former cases involving tax liability the suits appear to have been brought under our Declaratory Judgment Act, Code 1932, Section 8835 et seq., we have no case in which this form of procedure was questioned and the right to so proceed passed upon. The Court had jurisdiction of the subject matter, and no objection to the form of procedure being raised, it was waived, and all parties became bound by the decrees.

However, in the instant case, for the first time, the State challenges directly, by demurrer before the chancellor and here is an exhaustive brief, citing many authorities, the right of complainant below to maintain this suit under the Declaratory Judgment Act to contest the legality of the demand made by the commissioner for payment of the taxes claimed to be due the State. The issue is thus clearly presented. We think it clear that the right of the State to now raise this question is not impaired or affected by apparent acquiescence in any former cases. The right of the State to assert its sovereignty and immunity from suit cannot be denied on such ground.

We are not unmindful that the all-embracing opening words of Code, Section 1790, ''in all cases,'' are followed by the qualifying words, ''where not otherwise

provided," suggestive of a possible exception to follow, or to be found in some other enactment. Certainly, there is no qualification in Code, Section 1790, or the following sections codifying the Act of 1873, but to the contrary; for, as above shown, by subsequent sections the remedy provided in these sections is declared to be applicable to all cases where a taxpayer desires to contest a privilege tax demand, that this is the only remedy, and that all proceedings that might stay or delay payment of the tax are expressly prohibited.

In this situation, no construction of this qualifying language is permissible which would relate it to any proceeding for contesting such a tax demand without compliance with the condition precedent of prepayment, which is the heart and primary purpose of the Act. The rule which rejects for repugnancy such a construction of a proviso comes into play. Chief Justice GREEN states and approves this rule in *Brown* v. *Hows,* 163 Tenn. 138, 144, 40 S. W. (2d) 1017, 1019, saying: "As pointed out in Ruling Case Law, the modern rule is that a proviso or saving clause which is directly repugnant to the purview or body of the act is inoperative and void for repugnancy. 25 R. C. L. 987, and cases cited. See, also, for a full review of the authorities, *Penick* v. *High Shoals Mfg. Co.,* 113 Ga. 592, 38 S. E. 973."

The text in R. C. L. above cited reads: "233. Construction of Act with Reference to Provisos.—Most frequently perhaps a proviso is intended to restrain the preceding provisions and to except something that would otherwise have been within the act. Where this is the purpose of a proviso, the general language of the main provisions is to be construed as covering the matters contained in the proviso had those provisions stood alone. But this rule must not be carried too far. Such clauses

are often introduced from excessive caution and for the purpose of preventing a possible misinterpretation of the act by including therein that which was not intended. The rule is, therefore, not one of universal obligation, and must yield to the cardinal rule which requires the court to give effect to the general intent, if that can be discovered within the four corners of the act. If the general intention would be defeated by construing the act as embracing everything of the same general description as those particularly excepted therefrom, an arbitrary application of the rule is not admissible.''

And in a late work, 50 Am. Jur., p. 460, concluding a discussion of the subject ''Provisos'', and citing, among other cases, *Brown* v. *Hows, supra,* it is said: ''The rule now generally approved is that a proviso which is directly repugnant to the purview or body of the act is inoperative and void for repugnancy.'' Also, and consistently, a proviso is ordinarily to be construed strictly. 2 Bouv. Law Dict., Rawle's Third Revision, p. 2761; and 50 Am. Jur., p. 458. While this qualifying clause is not itself a proviso, it refers to a possible one and the rule quoted applies in principle.

And for yet another conclusive reason the Declaratory Judgment Act cannot be construed to afford a remedy in this proceeding against the State. It is well settled that the sovereign is not included in the general language of a statute, unless specifically mentioned. ''We recognize the rule of construction that leaves the sovereign not included in, but, so to speak, withdrawn from, the general language of a statute or Constitution, unless specifically mentioned.'' *Keith* v. *Funding Board,* 127 Tenn. 441, 464, 155 S. W. 142, 148, Ann Cas. 1914B, 1145, quoted with approval in *Mayor and Aldermen of Morristown* v. *Hamblen County* 136 Tenn. 242, 246, 188

S. W. 796. The opinion in the last cited case reviews many authorities for this rule. In the more recent cases of *Quinton* v. *Board of Claims,* 165 Tenn. 201, 54 S. W. (2d) 953, and *Automobile Sales Co.* v. *Johnson,* 174 Tenn. 38, 122 S. W. (2d) 453, 456, 120 A. L. R. 370, this principle of construction was re-affirmed. In the latter case, upon a full review of the authorities, it was said that "general procedural statutes are not held to apply to a State unless ,expressly so provided," and this language is quoted with approval from *State* v. *Kinne,* 41 N. H. 238: "It is a principle of the common law as old as the law itself, that 'the King is not bound by any statute, if he be not expressly named to be so bound.' . . . The rule which is thus applied to the crown is applicable to the State."

█ It appears that in the instant case a supplemental bill was filed praying for an injunction to restrain the collection, which was thereafter withdrawn, apparently upon the theory, tacitly conceded, that the pendency of this suit was effective to restrain the commissioner from proceeding to enforce the collection. We do not conceive that any suit can be maintained the effect of which is to restrain the collection of such a state tax by an authorized collection officer of the State, either upon the theory of its pendency, or by injunctive process, unless and until payment of the tax has first been made, this being expressly prohibited by Section 1795, above quoted.

For the reasons stated, the suit must be dismissed as beyond the jurisdiction of the Court.

### DISSENTING OPINION.

MR. JUSTICE GAILOR delivered the dissenting opinion.

I respectfully dissent from the majority opinion in this case to this extent: I think that the taxpayer is en-

titled to a declaration on the merits since its counsel was fully justified in believing that the course pursued had been approved by this Court on account of a number of our reported decisions: *Nashville, C. & St. L. R. Co.* v. *Wallace, Comptroller, etc.*, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191; *General Securities Co.* v. *Williams, Commissioner Finance & Taxation,* 161 Tenn. 50, 29 S. W. (2d) 662 (State Excise Tax Law); *Texas Co.* v. *Bryant, Com'r, et al.,* 178 Tenn. 1, 152 S. W. (2d) 627.

Under these circumstances, on the procedure followed, I think the taxpayer is entitled to a declaration of its rights on the merits and that our disapproval of the procedure by bill for a declaratory judgment should not be given retroactive effect.